NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0525n.06

Case No. 14-2471

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MICHAEL ANTHONY MIRELES, on behalf of S.M.M., a minor child, | ) ) ) | **FILED**<br>Jul 24, 2015<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| Defendant-Appellee. | ) | |

BEFORE: GILMAN, COOK, and KETHLEDGE, Circuit Judges.

PER CURIAM. Michael Mireles appeals a judgment affirming the denial of his claim for benefits under the Social Security Act. We AFFIRM.

In 2010, Mireles applied for Supplemental Security Income on behalf of his nine-year-old child, S.M.M., alleging onset of disability on September 1, 2008. After the Social Security Administration denied his claim for benefits, Mireles requested a hearing before an administrative law judge (ALJ). Mireles, S.M.M., and Dr. Ashir Kumar, a non-examining medical expert, testified at the February 2012 hearing. Mireles detailed S.M.M.'s behavioral problems, including school suspensions, fights, disobedience, and reluctance to maintain proper hygiene. After reviewing S.M.M.'s medical records, Dr. Kumar testified that S.M.M. experienced some less-than-marked functional limitations, but no marked or extreme limitations.

Mireles also submitted medical evidence and school records, including several written opinions from licensed psychologist Joseph Jeney, Ph.D. In June 2010, Dr. Jeney diagnosed S.M.M. with attention deficit hyperactivity disorder (ADHD) and concluded that S.M.M.'s "emotional and academic difficulties" required his enrollment in a special-education curriculum. In an October 2010 medical report, Dr. Jeney re-diagnosed S.M.M. with ADHD and added diagnoses for learning disorder and disruptive-behavior disorder. Finally, Dr. Jeney's 2011 childhood-disability evaluation noted that S.M.M. suffered marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others. Dr. Jeney based his 2011 report on his earlier records—he never examined S.M.M. after October 2010.

The ALJ applied the three-step evaluation for childhood-disability claims. *See* 20 C.F.R. § 416.924. At steps one and two, the ALJ found that S.M.M. engages in no substantial gainful activity and that he suffers from three severe impairments—ADHD, disruptive behavior disorder, and learning disorder. At step three, the ALJ reviewed six functional-equivalence domains and determined that S.M.M.'s impairments cause less-than-marked limitations in four domains but no limitations in the other two. The ALJ declined to give controlling weight to Dr. Jeney's written opinions, citing his limited treatment of S.M.M. Instead, the ALJ credited Dr. Kumar's opinion that S.M.M. experienced less-than-marked functional limitations. Because S.M.M. exhibited neither marked limitations in two functional-equivalence domains, nor extreme limitations in one domain, the ALJ denied benefits. Mireles appealed. The district court affirmed, finding that substantial evidence supported the ALJ's decision.

Mireles again appeals, arguing that the ALJ improperly weighed the opinions of Dr. Jeney and Dr. Kumar and unfairly circumscribed counsel's cross-examination of Dr. Kumar. Mireles also urges us to remand for the preparation of a complete transcript.

We review the ALJ's decision under a substantial-evidence standard, affirming if "a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)) (internal quotation marks omitted). We review the district court's decision de novo. *Id.*

The lower court concluded that Dr. Jeney acted as a consultant, not a treating source, so the ALJ was not obliged to give his opinion controlling weight. On appeal, Mireles claims that the ALJ rejected Dr. Jeney's "treating-source opinion" without a legal basis and ignores the lower court's classification of Dr. Jeney as a non-treating source. He fails to persuade us that the lower court misclassified Dr. Jeney, who examined S.M.M. no more than three times. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (concluding that two office visits, one prescription, and one refill "fail to evince the type of ongoing treatment relationship contemplated" by the treating-source regulation). Because the record aligns with Dr. Kumar's finding of less-than-marked functional limitations, the ALJ understandably favored his opinion over Dr. Jeney's non-treating-source opinion.

Next, Mireles protests the truncated cross-examination of Dr. Kumar. The ALJ prohibited Mireles's counsel from asking Dr. Kumar whether he "would . . . be in a better position to [fill in details about S.M.M.] if [he] were able to conduct a full clinical interview." Remarking that Dr. Kumar "is testifying as a medical expert, not a consultative examiner," the ALJ decided that the question fell outside Dr. Kumar's expertise. Although Mireles

characterizes the question as a probe into the foundation of Dr. Kumar's testimony, the question instead suggests that Dr. Kumar's medical-expert testimony is inherently less valuable than Dr. Jeney's consultative-examiner testimony. Evaluating consultative-examiner and medical-expert testimony falls within the ALJ's province. *See* 20 C.F.R. § 416.927. The ALJ did not err in refusing to cede this territory to Mireles's counsel. Moreover, Mireles offers "no reason to believe that the ALJ's decision would have changed had this line of questioning continued." *Young v. Apfel*, 40 F. App'x 157, 164 (6th Cir. 2002).

Dr. Kumar participated in the hearing via telephone, rendering some of his testimony inaudible. Mireles asks us to remand for preparation of a transcript filling in Dr. Kumar's missing testimony: "There are issues there, but in my opinion they do not meet—to the marked or less than marked (INAUDIBLE). I mean, I'm not denying that (INAUDIBLE)." In the second inaudible portion, Mireles argues, Dr. Kumar admitted that S.M.M.'s impairments caused serious limitations. This argument flies in the face of Dr. Kumar's repeated assertions, both before and after the inaudible testimony, that S.M.M.'s impairments produced only less-than-marked functional limitations.

To bolster his request to remand, Mireles cites a guideline requiring a consultation and potential audit for hearing transcripts with *more than* three "'inaudible' or 'unintelligible' portions" per page. Soc. Sec. Admin., Hearings, Appeals and Litigation Law Manual (HALLEX) I-4-1-53 (1993), 1993 WL 643630, at *1. But the page bearing Dr. Kumar's purported admission shows three inaudible portions, so the guideline does not apply.

We AFFIRM the judgment of the district court.